## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HON. BARTHOLOMEW S. MCGUIRE, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>PHILIPS NORTH AMERICA, LLC, PHILIPS HEALTHCARE INFORMATICS, INC., PHILIPS RS NORTH AMERICA LLC, f/k/a RESPIRONICS, INC., and KONINKLIJKE PHILIPS ELECTRONICS N.V.,<br><br>　　　　　Defendants. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

## INTRODUCTION

1.　　Plaintiff Bartholomew S. McGuire ("Plaintiff") by and through undersigned counsel, brings this action against Koninklijke Philips N.V. ("Royal Philips"), Philips North America LLC ("Philips NA"), Philips Healthcare Informatics, Inc. ("Philips Health"), and Philips RS North America LLC, f/k/a Respironics, Inc. ("Philips RS") (collectively, "Defendants" or "Philips") on behalf of himself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, except for the allegations about himself and his own personal circumstances, which are alleged based upon his own knowledge.

## PRELIMINARY STATEMENT

2.　　Plaintiff brings this action on behalf of himself and other similarly situated purchasers of Philips Continuous Positive Airway Pressure ("CPAP"), Bi-Level Positive Airway Pressure ("PAP") and mechanical ventilator devices (together, "PAP Machines") developed, manufactured, and distributed by Defendants with a defective foam component that degrades and emits harmful chemicals

resulting in serious health risks to consumers, including the risks of developing Type 2 Diabetes, heart problems and cancer.[1],[2]

3.     Defendants have long known that the polyester-based polyurethane ("PE- PUR") sound abatement foam in the PAP Machines had a propensity to degrade and emit harmful chemicals (the "Defect"), yet they chose to withhold that information from millions of consumers who rely on the PAP Machines to treat their serious sleep disorders.[3]

4.     Not only did Defendants fail to disclose this known Defect and the health risks it posed to Plaintiff and class members, but they also actively concealed the Defect from consumers—while continuing to manufacture, market and distribute the PAP Machines, to the detriment of millions of consumers.

5.     After learning of the Defect, Defendants first chose to update their shareholders of the serious health consequences posed by the PAP Machines and sometime later to issue a recall of the machines. Even then, Defendants have yet to issue notice directly to the millions of consumers who rely on the machines to treat their serious medical conditions.[4]

6.     As a result of the Defect and considerable costs associated with finding substitute treatment for Plaintiff's and Class members' sleep disorders, Plaintiff and Class members have suffered injury in fact, incurred damages, and otherwise been harmed by Defendants' conduct, and will continue to suffer due to the extended time it is going to take the Defendants to replace any defective devices.

7.     This action seeks damages based on, *inter alia*, Defendants' negligence, breaches of

---

[1] **Ex A**: Philips Respironics Recall letter
[2] **Ex. B**: Philips Recall Update
[3] **Ex. C**: Philips Q1 2021 Quarterly Report - Amsterdam, April 26, 2021
[4] *Id.*

express warranties, breaches of implied warranties and violation of the Magnuson-Moss Act.

## PARTIES

8.      Plaintiff Bartholomew McGuire is an individual and resident of the State of South Carolina.

9.      Plaintiff was diagnosed with sleep apnea and purchased a DreamStation BiPAP machine in 2020. Because of the recall, Plaintiff has been forced to continue using his DreamStation as he is unable to obtain a replacement machine and requires the assistance of a machine to sleep safely. Plaintiff now suffers from bronchiectasis, honeycomb of the lungs, early pulmonary fibrosis, and other issues.[5]

10.       Defendant Philips RS North America LLC (formerly Respironics, Inc.) is a Delaware corporation with its principal place of business located at 1001 Murry Ridge Lane, Murrysville, PA 15668.

11.      Defendant Philips North America LLC is a Delaware LLC with its principal place of business at 222 Jacobs Street, Cambridge MA, 02141.

12.      Defendant Philips Healthcare Informatics, Inc., a division of Philips North America, LLC, is a Delaware corporation with its principal place of business at 222 Jacobs Street, Cambridge MA, 02141.

13.      Defendant Koninklijke Philips N.V is a foreign corporation, with its principal place of business at Philips Center, Amstelplein 2, 1096 BC Amsterdam, The Netherlands. Royal Philips is the parent corporation of Defendants Philips NA, Philips Health and Philips RS.

## JURISDICTION AND VENUE

14.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2) because: (i) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (ii) Plaintiff and members of the proposed class are citizens of

---

[5] Dr. Robert Michael Bryant's Report – June 17, 2021

states different from Philips' home states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants Philips NA and Philips Health transact business in this District, maintain their corporate headquarters in this District, are subject to personal jurisdiction in this District, and therefore are deemed citizens of this District. Additionally, Defendants receive substantial revenue and profits from sales of PAP Machines in this District. A substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this District.

16.     This Court has personal jurisdiction over Defendants Philips NA and Philips Health because they have sufficient minimum contact in this District.

17.     The Court has personal jurisdiction over all Defendants, because they conduct substantial business in the District, and they have intentionally and purposefully placed PAP Machines into the stream of commerce within Massachusetts and throughout the United States.

## FACTUAL ALLEGATIONS

18.     Defendants are collectively in the business of developing, manufacturing, selling, supporting, maintaining, and servicing devices for sleep and respiratory care, including the defective PAP Machines.[6]

19.     Philips' PAP Machines treat sleep apnea, a "condition marked by abnormal breathing during sleep."[7] These "breathing lapses cause lower-quality sleep and affect the body's supply of oxygen, leading to potentially serious health consequences."[8]

---

[6] https://www.usa.philips.com/healthcare/solutions/breathing-and-respiratory-care
[7] https://www.sleepfoundation.org/sleep-apnea (accessed July 8, 2021)
[8] *Id.*

4

20.    Positive airway pressure ("PAP") therapy "…uses a machine to pump air under pressure into the airway of the lungs. This helps keep the windpipe open during sleep." [9]

21.    Philips offers three types of PAP machines:  CPAP machines, Auto-Adjusting machines, and BiPAP bi-level machines. CPAP provides "one level of pressure to your upper airway throughout the night."[10] Auto-adjusting machines "provide[ ] a variable pressure throughout the night based on your needs and sleep stage."[11] And BiPAP bi-level machines "provide [] two levels of pressure throughout the night, your prescribed pressure on the inhale and a lower pressure on the exhale."[12]

22.    Philips advertises itself as a trusted brand and "global leader in the sleep and respiratory markets."[13] Its branding promises consumers that they will "[b]reathe easier, sleep more naturally[.]"[14]

23.     Philips further assures consumers that its "sleep therapy systems are designed with the needs of care practitioners and patients in mind," and that its "quality systems reflect [Philips' commitment to providing exceptional therapy," among other things.[15] In addition, it has long advertised its PAP Machines as "clinically proven" treatment for sleep disorders. The PAP Machines can cost hundreds, even thousands, of dollars per machine.

24.    On June 14, 2021, Philips issued an "urgent" recall of twenty (20) models of its PAP Machines, in which it acknowledged that the Defect can cause "serious injury which can be life-

---

[9] https://medlineplus.gov/ency/article/001916.htm.
[10] https://www.usa.philips.com/c-e/hs/sleep-apnea-therapy/i-currently-use-sleep-apnea-therapy/sleep-apnea-machines.html (accessed July 8, 2021)
[11] *Id.*
[12] *Id.*
[13] http://www.respironics.com/us_en.
[14] http://www.respironics.com/product_library.
[15] https://www.usa.philips.com/healthcare/solutions/sleep.

threatening, cause permanent impairment, and/or require medical intervention to preclude permanent impairment."[16] The PE-PUR sound abatement foam can "degrade into particles" which can then "enter the device's air pathway and be ingested or inhaled by the user" and can "off-gas certain chemicals" into the consumer.[17]

25.    The recall affects millions of machines—and importantly, Plaintiff and others in the Class who rely on those machines—manufactured before April 26, 2021. The following models of Philips' PAP Machines have been recalled[18]:

## Affected Devices

| All Devices manufactured before 26 April 2021, All serial numbers | |
|---|---|
| Continuous Ventilator, Minimum Ventilatory Support, Facility Use | E30 (Emergency Use Authorization) |
| Continuous Ventilator, Non-life Supporting | DreamStation ASV |
| | DreamStation ST, AVAPS |
| | SystemOne ASV4 |
| | C-Series ASV |
| | C-Series S/T and AVAPS |
| | OmniLab Advanced+ |
| Noncontinuous Ventilator | SystemOne (Q-Series) |
| | DreamStation |
| | DreamStation Go |
| | Dorma 400 |
| | Dorma 500 |
| | REMstar SE Auto |

| All Devices manufactured before 26 April 2021, All serial numbers | |
|---|---|
| Continuous Ventilator | Trilogy 100 |
| | Trilogy 200 |
| | Garbin Plus, Aeris, LifeVent |
| Continuous Ventilator, Minimum Ventilatory Support, Facility Use | A-Series BiPAP Hybrid A30 (not marketed in US) |
| | A-Series BiPAP V30 Auto |
| Continuous Ventilator, Non-life Supporting | A-Series BiPAP A40 |
| | A-Series BiPAP A30 |

---

[16] Philips Respironics Recall letter
[17] *Id.*
[18] https://www.philipssrcupdate.expertinquiry.com/?ulang=en.

26.    Philips first publicly acknowledged the Defect on April 26, 2021, by issuing an "update" to its shareholders in which it admitted the "potential health risks related to [the] sound abatement foam" in its PAP Machines in its April 26, 2021 Quarterly Report.[19]

27.    In the quarterly statement to shareholders, Defendants said, "[The] potential risks of particulate exposure [from PE-PUR degradation] include headache, irritation, inflammation, respiratory issues, and possible toxic and carcinogenic effects. The potential risks of chemical exposure due to off-gassing include headache, irritation, hypersensitivity, nausea/vomiting, and possible toxic and carcinogenic effects."[20]

28.    Defendants have advised consumers who use the CPAP and BiLevel PAP machines to immediately "discontinue use" and consult their physicians.[21] However, Philips acknowledges "alternate ventilator options for therapy may not exist or may be severely limited for patients who require a ventilator for life-sustaining therapy.[22]

29.    Philips did not communicate any information about the serious health risks posed by its PAP Machines to anyone except its shareholders until June 14, 2021, via the Recall Letter.[23]

30.    Four weeks before it issued the recall, Philips stopped shipments of the PAP Machines, only then to issue a recall to the public.

31.    It is unclear when the Defendants first learned of the Defect, but they admit to receiving "user reports" and complaints about the Defect and to conducting testing that confirmed

---

[19] Philips Q1 2021 Quarterly Report - Amsterdam, April 26, 2021
[20] *Id.*
[21] Philips Respironics Recall Letter
[22] *Id.*
[23] *Id.*

the potentially serious health consequences from the defective PE-PUR sound abatement foam.[24]

32.    Based on the recall year range, Philips has known about the Defect for years, meaning that the Defendants have known consumers were exposed to and experiencing the physical symptoms caused by their PAP Machines.[25]

33.    Ironically, Philips stated online that, "There is nothing we take more seriously than providing patients with high quality products that are safe and reliable. If an issue arises, we are proactive in communicating and addressing it as we work tirelessly towards a resolution."[26] Yet, rather than issue an immediate direct recall notice to the consumers affected by the Defect, Philips issued a delayed online recall notice, which directs "patients, users and caregivers" to register their units and "begin a claim" for affected units.[27]

34.    Philips relies on empty promises that it has a "comprehensive plan to replace the current sound abatement foam with a new material that is not affected by this issue and has already begun this process."[28]

## STATUTE OF LIMITATIONS

35.    Philips has known about the defect while continuously marketing and selling the defective PAP Machines to unsuspecting consumers and representing to those consumers that the machines are safe and "clinically proven" during the entirety of the class period.

36.    Despite its knowledge about the Defect, Philips failed to disclose and rather, concealed

---

[24] Philips Q1 2021 Quarterly Report - Amsterdam, April 26, 2021
[25] *Id.*
[26] Sleep and respiratory care update | Philips;
https://www.usa.philips.com/healthcare/e/sleep/communications/src-update
[27] *Id.*
[28] https://www.usa.philips.com/healthcare/e/sleep/communications/src-update

this material information from Plaintiff and Class members.

37.    Plaintiff and other members of the Class justifiably relied on Philips to disclose the Defect in the PAP Machines that they purchased, because the Defect was not discoverable by them through reasonable means.

38.    By purposefully concealing the Defect from consumers in order to continue to gain a profit off them, all potentially relevant statutes of limitations have been tolled.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action on his own behalf, and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:


**Nationwide Class:**

All persons in the United States who have purchased the PAP Machines.

 Or, in the alternative,

**South Carolina Subclass:**

All persons in South Carolina who have purchased the PAP Machines.

40.    Together, the Nationwide Class and South Carolina Subclass will be referred to collectively as the "Class."

41.    Excluded from the Class are Defendants, any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers and their immediate family members and Court staff assigned to this case.  Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

42.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would

9

be used to prove those elements in individual actions alleging the same claims.

43.    This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

44.    Upon information and belief, the Class is so numerous that joinder of all members is impracticable.  While the exact number and identities  of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, Philips acknowledges that millions of PAP Machines, and thus millions of consumers, are affected.  Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media, and/or published notice.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

45.    Plaintiff's claims are typical of the claims of the Class since his machine contains the same PE-PUR foam defect contained in the affected machines of all members of the Class. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

46.    Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Class that he seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class action litigation, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

**Predominance and Superiority:  Fed. R. Civ. P. 23(b)(3)**

47.    A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members and questions of law and fact common to all class members predominate over questions affecting only individual class members. Class members can be readily identified and notified based on, *inter alia*, Defendants' records of PAP Machine sales, and other records maintained by Defendants.

**Common Questions of Fact and Law: Fed. R. Civ. P. 23(a)(2)**

48.    Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a.    Whether Defendants engaged in the conduct alleged herein;

    b.    Whether Defendants' PAP Machines are predisposed to the Defect;

    c.    Whether Defendants purposefully failed to disclose the existence and cause of the Defect;

    d.    Whether Defendants misrepresented the PAP Machines as safe;

    e.    Whether Defendants' conduct, as described herein, was likely to mislead a reasonable consumer;

    f.    Whether Defendants' statements, concealments and omissions regarding the PAP Machines were material to a reasonable consumer;

    g.    Whether the PAP Machines were unfit for the ordinary purposes for which they were used;

    h.    Whether Defendants' conduct tolls any or all applicable limitations periods;

    i.    Whether the Defect is latent or hidden, such that Plaintiff and members of the Class could not have reasonably discovered it;

    j.    Whether Defendants' conduct alleged herein constitutes a breach of express warranty;

k.      Whether Defendants' conduct alleged herein constitutes a breach of the implied warranty of merchantability;

l.      Whether Defendants have been unjustly enriched by the conduct allegedherein;

m.     Whether Plaintiff and the members of the Class are entitled to damages and if so, the measure of damages for the Class;

n.      Whether Plaintiff and members of the Class are entitled to restitution, injunctive relief, or other equitable relief and/or other relief as may be proper.

49.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## COUNT I
### Breach of Express Warranty
### (As to All Defendants)

50.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

51.    Plaintiff brings this count on behalf of himself and the Class.

52.     Philips expressly warranted to Plaintiff and Class members that the PAP Machines were safe and would work as advertised to "… make life better."[29]

53.    Philips made these express warranties regarding the defective PAP Machines' quality and fitness for use in writing through its website, advertisements, and marketing materials and on the PAP Machines' packaging and labels.  These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the PAP Machines.

54.    Philips' advertisements, warranties, and representations were made in connection with the sale of the PAP Machines to Plaintiff and the Class.

55.    Plaintiff and members of the Class relied on these express warranties when choosing to

---

[29] https://www.usa.philips.com/c-e/hs/sleep-apnea-therapy/dare-to-dream.html.

purchase the PAP Machines.

56.     The PAP Machines do not conform to Phillips' advertisements, warranties and representations in that they are not safe and do not work as advertised to "…make life better."

57.     Defendants breached the express warranty by knowingly selling to Plaintiff and Class members PAP Machines which, at the point of sale, were not of high quality, were not safe and did not work properly, but rather contained a defective component that renders the PAP Machines dangerous.

58.     Defendants knew or had reason to know that the PAP Machines contained the Defect when it sold the machines to Plaintiff and Class Members.

59.     Defendants failed to inform Plaintiff and Class members of the Defect.

60.     Instead, Phillips concealed the dangerous health effects of the PAP Machines and deceptively represented that these products were safe, healthy and appropriate for use.

61.     The adverse health effects associated with the use of the PAP Machines existed when they left Philips' possession or control and were sold to Plaintiff and members of the Class.

62.     Plaintiff and Class members purchased PAP Machines that contained the Defect, which was undiscoverable by them at the time of purchase.

63.     As manufacturers, marketers, advertisers, distributors and sellers of the PAP Machines, Defendants had exclusive knowledge and notice the PAP Machines did not conform to the affirmations of fact and promises made by them.

64.     As a result of the Defect in the PAP Machines, Plaintiff and Class members have suffered damages including but not limited the cost of the defective device, loss of device use and other related damage.

65.    Thus, Defendants' attempt to limit or disclaim express warranties in any manner that would exclude coverage of the Defect is unenforceable and void.

66.    Recovery by the Class is not restricted to any written warranties promising to repair and/or correct defects.

67.    Defendants' conduct is the direct and proximate cause of the injuries suffered by the Plaintiffs and Class members.

68.    Plaintiff and Class members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT II
### Breach of the Implied Warranty of Merchantability
### (As to All Defendants)

69.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

70.    Plaintiff brings this count on behalf of himself and the Class.

71.    Defendants are merchants engaging in the sale of goods to Plaintiff and the Class.

72.    There was a sale of goods from Defendants to Plaintiff and the Class.

73.    As the developer, manufacturer, marketer, distributor, and/or seller of the defective PAP Machines Defendants impliedly warranted to Plaintiff and Class members that its PAP Machines were fit for their intended purpose in that they would be safe to treat Plaintiff's and Class members' sleep disorders.

74.    Contrary to these representations and warranties, the PAP Machines were not fit for their ordinary use, and did not conform to Defendants' affirmations of fact and promises as use of the PAP Machines was accompanied by the risk of adverse health effects that do not conform to the packaging.

75.    Defendants breached the implied warranty in the contract for the sale of the PAP Machines

by knowingly selling to Plaintiff and Class members a product that Defendants knew would expose Plaintiff and Class members to significant health risks, thus meaning Defendants knew that the PAP Machines were not fit for their intended purpose.

76.     Defendants were on notice of this breach, as they were made aware of the adverse health effects accompanying use of the PAP Machines.

77.     Plaintiff and Class members did not receive the goods as bargained for because the goods they received were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

78.     Plaintiff and members of the Class are the intended beneficiaries of Philips' implied warranties.

79.     The PAP Machines were not altered by Plaintiff or the members of the Class.

80.     Plaintiff and Class members used the PAP Machines in the ordinary manner in which such devices were intended to be used.

81.     The PAP Machines were defective when they left the exclusive control of Philips. The PE-PUR foam always posed an unreasonable risk of degrading, exposing consumers to serious health risks.

82.     The PAP Machines were defectively designed and/or manufactured and unfit for their intended purpose, and Class members did not receive the goods that they bargained for.

83.     Plaintiff and Class members purchased PAP Machines that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

84.     As a result of the defect in the PAP Machines, Plaintiff and Class members have suffered damages including, but not limited to, the cost of the defective device, loss of use of the

device and other related damage.

85.     Defendants breached the implied warranty of merchantability to the Plaintiff and Class members.

86.     Thus, Defendants' attempt to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void.

87.     Plaintiff and Class members have been damaged by Defendants' breach of the implied warranties.

88.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT III
### Unjust Enrichment
### (As to All Defendants)

89.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

90.     Plaintiff brings this count on behalf of himself and the Class.

91.     Plaintiff and the Class conferred substantial benefits on Defendants through their purchase of PAP Machines.  Defendants knowingly and willingly accepted and enjoyed these benefits.

92.     Defendants had knowledge of the benefits received by them at the expense of Plaintiff and members of the Class, because Philips knew that the PAP Machines failed to operate as advertised.

93.     Allowing Defendants to retain their ill-gotten profits/benefits received from deceptive marketing and advertising schemes, and the ultimate sales of PAP Machines to the Plaintiff and Class members would fly in the face of equity and good conscience.

94.     Thus, it would be unjust and inequitable for Philips to retain the benefit without

16

restitution to Plaintiff and the Class members.

95.     Plaintiff and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

96.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available.

## COUNT IV
### Strict Liability – Failure to Warn
### (As to All Defendants)

97.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

98.     Plaintiff brings this count on behalf of himself and the Class.

99.     Defendants had a duty to warn Plaintiff and the Class members regarding the Defect and the true risks associated with the PAP Machines.

100.    Defendants were in a superior position to know of the Defect, yet, as outlined above, chose to do nothing when the defect became known to them.

101.    Defendants failed to provide adequate warnings regarding the risks of the PE-PUR foam after knowledge of the Defect was known only to them.

102.    Defendants had information regarding the true risks but failed to warn Plaintiff, Class members, and their physicians to strengthen their warnings.

103.    Despite their knowledge of the Defect and obligation to unilaterally strengthen the warnings, Defendants instead chose to actively conceal this knowledge from the public.

104.    Plaintiff and Class members would not have purchased, chosen, and/or paid for all or part of the PAP Machines if they knew of the Defect and the risks of purchasing the PAP Machines.

105.    This Defect proximately caused Plaintiff's and Class members' damages.

17

106.    The Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT V
### Strict Liability – Design Defect
### (As to All Defendants)

107.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

108.    Plaintiff brings this count on behalf of himself and the Class.

109.    The design of the PAP Machines, including, but not limited to, design and use of the PE-PUR foam and the placement of the foam within the PAP Machines, was defective and unreasonably dangerous.

110.    Inhalation of the degrading PE-PUR foam while the PAP Machines were in use by Plaintiff and Class members, caused exposure to materials with toxic and carcinogenic effects.

111.    The design of the PAP Machines and the PE-PUR foam rendered the PAP Machines not reasonably fit, suitable, or safe for their intended purpose.

112.    The dangers of the degrading PE-PUR foam in PAP Machines outweighed the benefits and rendered the PAP Machines unreasonably dangerous.

113.    There are other PAP Machines and other similar machines that do not use a similarly toxic foam, meaning that there were other means of production available to Defendants.

114.    The PAP Machines were unreasonably unsafe, and the products should have had stronger and clearer warnings or should not have been sold in the market.

115.    The PAP Machines did not perform as an ordinary consumer would expect.

116.    Plaintiff and Class members have suffered damages in an amount to be determined at trial

and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

### COUNT VI
### Negligent Failure to Warn
### (As to All Defendants)

117.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

118.    Plaintiff brings this count on behalf of himself and the Class.

119.    Defendants owed Plaintiff and Class members a duty of care and to warn of any risks associated with the PAP Machines.

120.    Defendants knew or should have known of the defect but failed to warn Plaintiff, Class members, and their doctors.

121.    Defendants' breach of duty caused Plaintiff and Class members economic damages and injuries in the form of exposure to materials with toxic and carcinogenic effects.

122.    Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

### COUNT VII
### Negligent Design Defect
### (As to All Defendants)

123.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

124.    Plaintiff brings this count on behalf of himself and the Class.

125.    Defendants owed Plaintiff and the Class a duty to design the PAP Machines in a reasonable manner.

19

126.    The design of the PAP Machines and the PE-PUR foam was defective and unreasonably dangerous, causing degradation and inhalation of the foam, and causing exposure to materials with toxic and carcinogenic effects.

127.    The design of the PAP Machines caused them to be not fit, suitable, or safe for their intended purpose. The dangers of the PAP Machines outweighed the benefits and rendered the products unreasonably dangerous.

128.    There are CPAP and other machines that do not use the PE-PUR toxic foam that is subject to degradation, inhalation, and ingestions.

129.    The risk/benefit profile of the PAP Machines was unreasonable, and the products should have had stronger and clearer warnings or should not have been sold in the market.

130.    The PAP Machines did not perform as an ordinary consumer would expect.

131.    The Defendants' negligent design of the PAP Machines was the proximate cause of damages to the Plaintiff and the Class members.

132.    Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

### COUNT VIII
### Negligent Recall
### (As to All Defendants)

133.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

134.    Plaintiff brings this count on behalf of himself and the Class.

135.    In issuing a voluntary recall, Philips assumed duties to Plaintiff and the Class to exercise reasonable care in issuing and implementing the recall.

20

136.    Defendants had the ability to make Plaintiff and Class members aware of the recall by sending physical notice to Plaintiff, Class members, and/or their physicians who could have then warned Plaintiff and Class Members.

137.    Defendants chose not to issue physical notices, but instead elected to give notice of the recall online, where few would see it.

138.    Defendants did not have an appropriate plan in action to replace the defective units in a timely manner.

139.    Failing to replace the PAP Machines in a timely manner means that Plaintiff and Class members who rely on these devices for the betterment of their health will see their health degrade, thus Plaintiff and Class members have suffered and will continue to suffer damages.

140.    Defendants breached their duty to properly recall by failing to inform and recall/replace the PAP Machines in a timely manner.

141.    As a direct result of Defendants' breach of duty, Plaintiff and the Class have suffered harm in an amount to be determined at trial.

<u>**COUNT IX**</u>
**Violation of the Magnuson-Moss Act, 15 U.S.C. § 2301**
**(As to All Defendants)**

142.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

143.    Plaintiff brings this count on behalf of himself and the Class.

144.    The Magnuson-Moss Act contains, in pertinent part, the following definitions:

(1)    The term "consumer product" means any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)

    (2)    The term "consumer" means a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).

    (3)    The term "supplier" means any person engaged in the business of making a consumer product directly or indirectly available to consumers.

    (4)    The term "warrantor" means any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty.

    (5)    The term "implied warranty" means an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product.

15 U.S.C.A. § 2301.

145.    Plaintiff and members of the Class are "consumers". 15 U.S.C. § 2301(3).

146.    Philips is a "supplier" and "warrantor."  15 U.S.C. § 2301(4) and (5).

147.    The PAP machines are consumer products. 15 U.S.C. § 2301(1).

148.    This is a claim arising out of state law, per 15 U.S.C. § 2301 (7).

149.    Philips impliedly warranted that the PAP Machines would be free of defects at the time of delivery, and the PAP Machines carried an implied warranty of merchantability.

150.    Philips breached its warranties by offering for sale and selling PAP Machines that were by design and construction defective and unsafe, thereby subjecting Class members who purchased the PAP Machines to damages and risks of loss and injury.

151.     Philips has breached and continues to breach its written and implied warranties of safety, thereby damaging Plaintiff and Class members, when their PAP Machines fail to perform as represented due to an undisclosed Defect.

152.     As a result of Philips' continued breach of its warranties, Plaintiff and Class members have suffered damages.

153.     Plaintiff and the Class seek full compensatory and consequential damages allowable by law, appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Philips' wrongful acts and practices, restitution, attorney's fees and costs, and any other relief to which Plaintiff and the Class may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully request that this Court:

A.     Certify the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.     Declaring that Defendants are financially responsible for notifying the members of the Class about the pendency of this action;

C.     Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

D.     Award pre-judgment and post-judgment interest;

E.     Grant appropriate injunctive and/or declaratory relief;

F.     Award reasonable attorney's fees and costs; and

G.     Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated:  July 14, 2021                    Respectfully submitted,


**PASTOR LAW OFFICE, LLP**

/s/ David Pastor_____
David Pastor (BBO # 391000)
63 Atlantic Avenue, 3d Floor
Boston, Massachusetts 02110
Tel.: (617) 742-9700
Fax: (617) 742-9701
Email: dpastor@pastorlawoffice.com


**ANASTOPOULO LAW FIRM LLC**

/s/ Roy T. Willey_____
Roy T. Willey, IV (*Pro Hac Vice Forthcoming*)
Eric M. Poulin (*Pro Hac Vice Forthcoming*)
Blake G. Abbott (*Pro Hac Vice Forthcoming*)
Jarrett W. Withrow (*Pro Hac Vice Forthcoming*)
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
Fax: (843) 494-5536
Email: roy@akimlawfirm.com
            eric@akimlawfirm.com
            blake@akimlawfirm.com
            jarrett@akimlawfirm.com


**ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS**